```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              LEXINGTON
```

| | |
|---|---|
| WILLIAM TURNER and ) | |
| CARETH TURNER, ) | |
| ) | |
|     Plaintiffs, ) | Civil Action No. 5:05-CV-189-JMH |
| v. ) | |
| ) | |
| WERNER ENTERPRISES, INC. ) | |
| and JOHN R. ARLANDSON ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
|     Defendants. ) | |
| ) | |

                \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on Defendants' motion for partial summary judgment on the issue of punitive damages [Record No. 23]. Plaintiffs filed a response, and this matter is now ripe for review.

### I. BACKGROUND

The facts relevant to whether punitive damages are available are not in dispute.[1] While Plaintiffs were driving in their pick-up truck on I-75 in Fayette County, they were struck by a tractor-trailer driven by Defendant John Arlandson, an employee of Defendant Werner Enterprises, Inc. According to Arlandson's deposition testimony, he began to get tired around the time that he entered the Lexington area, and according to Plaintiffs' brief (there is no deposition excerpt attached on this point) Arlandson decided to try to get to the Georgetown truck stop, which is 23

---

[1] The only evidence submitted by either party is a series of excerpts from Arlandson's deposition.

miles north of where the accident occurred. Arlandson testified that at the time of the accident he was sleepy but not asleep, although he also somewhat equivocally stated that "obviously when you're tired, you're kind of like in an . . . in and out state." Upon coming up behind Plaintiffs' truck, Arlandson swerved, but his right front fender collided with the left rear edge of a trailer being pulled by Plaintiffs. At the time of the collision, Arlandson was traveling at 57 m.p.h. in a 65 m.p.h. zone.

## II. STANDARD OF REVIEW

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, particularly where there has been an opportunity for discovery." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (internal citations omitted). In considering the motion, the Court must construe the facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

A.  *The Standard for Punitive Damages*

Defendants are not arguing that they are entitled to a dismissal of the negligence claims, but rather only that under Kentucky law, Plaintiffs are not entitled to recover punitive damages. Pursuant to KRS 411.184(2), punitive damages are available if a plaintiff proves by clear and convincing evidence that a defendant acted with fraud, oppression, or malice. In addition, the Kentucky Supreme Court has determined that notwithstanding the statute, punitive damages are still available if gross negligence is shown. *See Williams v. Wilson*, 972 S.W.2d 260, 262-65 (Ky. 1998).

There is no evidence of fraud, oppression, or the type of subjective malice contemplated by KRS 411.184,[2] but Plaintiffs contend that a jury could determine that Arlandson was grossly negligent. In defining gross negligence, the Kentucky Court of Appeals recently noted that "the courts of the Commonwealth have not always used precisely the same language in defining gross

---

[2] Malice is defined under the statute as "either conduct which is specifically intended by the defendant to cause tangible or intangible injury . . . or conduct that is carried out . . . both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm." KRS 411.184(1)(c). A reading of cases subsequent to *Wilson* indicates that courts sometimes consider gross negligence as a basis for punitive damages entirely distinct from malice, while in other cases courts treat gross negligence as a type of malice. As a practical matter, there is no difference: if reading the facts in the light most favorable to Plaintiffs, there is evidence upon which a reasonable jury could find gross negligence, Defendants' motion must be denied.

3

negligence, [but] the prevailing understanding defines gross negligence as a 'wanton or reckless disregard for the safety of other persons.' It is not necessary that the jury find the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Kinney v. Butcher*, 131 S.W.3d 357, 359 (Ky. App. 2004)(quoting *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003)); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 471 (6th Cir. 2004)(noting that under Kentucky law, punitive damages may be awarded when negligence is "accompanied by wanton or reckless disregard for the lives, safety, or property of others").

B.   *Punitive Damages Against Arlandson*

Arlandson argues that he was, at worst, negligent. Plaintiffs respond by stating that a jury could find one who falls asleep while driving a tractor-trailer is acting with a wanton or reckless disregard for the lives, safety, and property of the other people on the road. While neither party has cited any Kentucky cases directly on point, the Court finds that under the gross negligence standard in Kentucky, even reading the facts in the light most favorable to Plaintiffs, Arlandson is entitled to judgment as a matter of law on the punitive damages claim.

To determine the correct outcome under Kentucky law, the discussion of gross negligence by the Kentucky Court of Appeals in

4

*Kinney v. Butcher* is quite useful.  In *Kinney*, there was evidence that the defendant was speeding and attempting to pass another car on a two-lane road in a no-passing zone.  *See Kinney*, 131 S.W.3d at 359.  The trial court refused to give a punitive damages instruction, and the Court of Appeals affirmed.  As the Court of Appeals noted,

> [w]ere we to accept Kinney's argument that [speeding and trying to pass in a no-passing zone] amounts to wanton or reckless disregard for the safety of others, it would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents.  Nearly all auto accidents are the result of negligent conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages.  We are of the opinion that punitive damages should be reserved for truly gross negligence, as seen in cases such as *Shortridge v. Rice*, *Stewart v. Estate of Cooper*, and *Phelps v. Louisville Water Company*.  In *Shortridge* and *Stewart*, the defendant tortfeasors were driving while intoxicated; and in *Phelps*, the jury was presented with eighteen instances [of the defendant's misconduct].

*Id.* (footnotes omitted).

So too would a finding of gross negligence in this action "effectively eliminate the distinction between ordinary and gross negligence."  Arlandson's alleged misconduct in this action, driving while sleepy, but within the speed limit, apparently within the proper lane, and without any suggestion of intoxication, does not match the level of culpability of the defendant in *Kinney*, in which no punitive damages were available.  Nor certainly does it reach the level of culpability of the drunk drivers in *Shortridge* and *Stewart*.

5

Plaintiffs cite only two cases, both from other jurisdictions, for the proposition that falling asleep while driving can lead to a finding of recklessness, but neither of these cases are persuasive. Plaintiffs correctly note that in the first, *Briner v. Hyslop*, 337 N.W.2d 858 (Iowa 1983), the Iowa Supreme Court upheld a punitive damages award against a driver who had fallen asleep at the wheel. Plaintiffs neglect to mention, however, that other facts were in play: the driver in *Briner* had, as the court put it, "consumed several double scotches" before the accident. *See id.* at 860. One who falls asleep at the wheel after drinking "several double scotches" seems distinctly more culpable than one who, without any suggestion of alcohol, has continued driving though sleepy and perhaps asleep.

The second case cited by Plaintiffs is also unpersuasive. In *Pennsylvania v. Cathey*, 645 A.2d 250 (Pa. 1994), the Pennsylvania Supreme Court upheld a conviction for "careless driving" when a driver fell asleep, swerved into oncoming traffic, and caused an accident. The defendant in *Cathey*, however, was acquitted of the more serious charge of "reckless driving," and as described by the Pennsylvania court, the level of culpability for the offense of "careless driving" was "less than willful and wanton conduct, but more than ordinary negligence or the mere absence of care under the circumstances." *Id.* at 250-51. So while Plaintiffs are correct that the court found that falling asleep while driving in that

6

situation constituted something more than ordinary negligence, it is not accurate to say that the case stands for the proposition that falling asleep while driving constitutes the type of wanton or reckless activity required to obtain punitive damages under Kentucky law.

Arlandson may well have been negligent — that is a question for a jury — but Plaintiffs, who will have the burden of proof at trial, have submitted no evidence upon which a reasonable jury could find that Arlandson acted with a reckless or wanton disregard of the safety of others.

C.  *Punitive Damages Against Werner*

The claims against Werner are based on a respondeat superior theory, and as the punitive damages claims against Arlandson are being dismissed, the punitive damages claims against Werner must be dismissed as well. As an alternative ground of decision, the Court also finds that the punitive damages claim against Werner are barred under KRS 411.184(3), which provides that "[i]n no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless such principal or employer authorized or ratified or should have anticipated the conduct in question."

Plaintiffs do not claim that Werner authorized or should have anticipated Arlandson's conduct, but they do argue that a jury could find that Werner had ratified it. Plaintiffs' theory is that

7

the failure of Werner to punish Arlandson after the accident constitutes ratification, but Plaintiffs cite no cases supporting such a theory, and the Court finds no cases holding that the failure to discipline an employee-driver who has been in an accident constitutes ratification by an employer such that punitive damages would be available.

### CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

(1) That Defendants' motion for partial summary judgment [Record No. 23] be, and the same hereby is, **GRANTED**.

(2) That Plaintiffs' claims for punitive damages be, and the same are, **DISMISSED WITH PREJUDICE.**

This the 31st day of July, 2006.



Signed By:

*Joseph M. Hood*

United States District Judge